**KIRKPATRICK & LOCKHART**
**PRESTON GATES ELLIS LLP**
599 Lexington Avenue
New York, New York 10022-6030
Phone: (212) 536-3900
Fax: (212) 536-3901

One Newark Center, Tenth Floor
Newark, New Jersey 07102
Phone: (973) 848-4000
Fax: (973) 848-4001

John M. Marmora (JD-1343)
*Attorneys for McDonald's Corporation,*
*defendant/counterclaim-plaintiff*

--------------------------------------------------------------------X
UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X

HYDRIC, INC.,

          Plaintiff,

    v.

MCDONALD'S CORPORATION,

          Defendant.

--------------------------------------------------------------------X

Civil Action No. 07 CV 5700 (SCR)

ECF CASE

**NOTICE OF REMOVAL**

**TO THE JUDGES OF THE UNITED STATES DISTRICT**
**COURT FOR THE SOUTHERN DISTRICT OF NEW YORK:**

PLEASE TAKE NOTICE that defendant-counterclaim plaintiff, MCDONALD'S

CORPORATION ("McDonald's" or "Defendant"), by and through its counsel, Kirkpatrick &

Lockhart Preston Gates Ellis LLP, pursuant to 28 U.S.C. §§ 1441, 1446, and 1332, hereby

removes this action from the Supreme Court of the State of New York, County of Dutchess, to

the United States District Court for the Southern District of New York and respectfully states as
follows:

## PROCEDURAL BACKGROUND

1.    On or about May 14, 2007, plaintiff, Hydric, Inc. ("Hydric" or "Plaintiff"), filed
its Summons and Complaint in the matter entitled *Hydric, Inc. v. McDonald's Corporation*,
Index No. 2787/07 in the Supreme Court of the State of New York, County of Dutchess ("the
State Court Action").

2.    Defendant has not entered its appearance, filed a responsive pleading, or
otherwise responded to Plaintiff's Summons or Complaint in the State Court Action.

3.    This Notice of Removal is filed in the District Court of the United States for the
district in which the State Court Action is pending.

4.    Service of process was made upon Defendant through CSC Corporation on May
25, 2007. Pursuant to 28 U.S.C. § 1446(a), attached as Exhibit A is a copy of the Summons and
Complaint received on that date, which constitutes all process, pleadings and orders served upon
Defendant in the State Court Action.

5.    This notice is being filed within 30 days after receipt by Defendant of a copy of
the initial pleading setting forth the claims for relief in this matter, and is, therefore, timely filed
pursuant to 28 U.S.C. §§ 1446(b) and (d).

## GROUNDS FOR REMOVAL

6.    This Court has original jurisdiction of the present action pursuant to 28 U.S.C. §
1332(a), which provides for original jurisdiction in the district courts of all actions where the
matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and in
which there is complete diversity of citizenship among the parties.

7.     Plaintiff is a corporation organized under the laws of the State of New York with its principal place of business located in Poughkeepsie, New York. Plaintiff is a citizen of the State of New York.

8.     Defendant is a corporation organized under the laws of the State of Delaware with its principal place of business at One McDonald's Plaza, Oak Brook, Illinois; therefore, it is not a citizen of New York.

9.     Accordingly, complete diversity exists in this case in that Plaintiff is a New York resident and Defendant is a foreign resident.

10.    The amount in controversy, exclusive of interests and costs, exceeds $75,000.00. Plaintiff asserts an action for declaratory judgment regarding a purchase option to a lease between the Plaintiff and Defendant in the amount of $165,000.00.

11.    New York federal case law is clear that, "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." Correspondent Servs. Corp. v. First Equities Corp. of Florida, 442 F.3d 767, 769 (2d Cir. 2006), quoting Hunt v. Washington State Apple Adver. Comm'n, 432 U.S. 333, 347 (1977).  Additionally, the Second Circuit has stated that "the amount in controversy is calculated from the plaintiff's standpoint; the value of the suit's intended benefit or the value of the right being protected or the injury being averted constitutes the amount in controversy when damages are not requested." Correspondent Servs., 442 F.3d at 769, quoting Kheel v. Port of New York Auth., 457 F.2d 46, 49 (2d Cir. 1972).  Accordingly, the amount in controversy in this case substantially exceeds the $75,000.00 required for federal diversity jurisdiction.

12.    Therefore, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332, and the suit is properly removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.

13.    By filing this Notice of Removal, Defendant does not waive any defense that may be made available to it.

14.    Written notice of the filing of this Notice will promptly be given to Plaintiff and, together with a copy of the Notice of Removal, will be filed with the Clerk of the Dutchess County Supreme Court, as provided by 28 U.S.C. § 1446(d).

15.    This Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure, and is filed with this Court within thirty (30) days after Defendant received the Summons with Notice in the State Court Action.

**WHEREFORE**, Defendant prays that this matter proceed in this Court as an action properly removed thereto.

Dated: June 13, 2007

Respectfully submitted,

**KIRKPATRICK & LOCKHART
PRESTON GATES ELLIS LLP**
*Attorneys for McDonald's Corporation,
defendant-counterclaim plaintiff*

BY:

John M. Marmora
One Newark Center, Tenth Floor
Newark, NJ 07102
Tel: (973) 848-4000
Fax: (973) 848-4001
E-mail: john.marmora@klgates.com

**EXHIBIT A**

a C 106-Summons without Notice, Blank Court,
Personal Service

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS

Index No. 2787/07
Filed 5/14/07

*Plaintiff designates Dutchess
County as the place of trial*

HYDRIC, INC.,

Plaintiff,

*The basis of the venue is Plaintiff's principal
place of business*

against

MCDONALD'S CORPORATION,

Defendant.

## SUMMONS
*Plaintiff's address is
54 Garden Street
Poughkeepsie, New York 12601*

To the above named Defendant:

**YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a
copy of your answer, or if the complaint is not served with this summons, to serve a notice of appearance, on
the Plaintiff's Attorneys within 20 days after the service of this summons, exclusive of the day of service (or
within 30 days after the service is complete if this summons is not personally delivered to you within the State
of New York); and in case of your failure to appear or answer, judgment will be taken against you by default
for the relief demanded herein.

Dated: May 11, 2007
Defendant's address:          1 McDonald's Plaza
                              Oak Brook, Illinois 60523

Upon your failure to appear, judgment will be taken against you for the relief requested in the Verified
Complaint.

**CUDDY & FEDER LLP**
*Attorneys for Plaintiff*

*Office & P.O. Address:*
300 Westage Business Center
Suite 380
Fishkill, New York 12524
(845) 896-2229

**Address for Service of Papers:**
Cuddy & Feder LLP
445 Hamilton Avenue, 14th Floor
White Plains, New York 10601
(914) 761-1300

C&F: 735823.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF DUTCHESS
-----------------------------------------------------------X

HYDRIC, INC.,

                       Plaintiff,

    -against-

MCDONALD'S CORPORATION,

                     Defendant.
-----------------------------------------------------------X

**VERIFIED**
**COMPLAINT**

Index No.

Plaintiff, Hydric, Inc. ("Plaintiff" or "Landlord"), by its attorneys, Cuddy &

Feder LLP, as and for its Verified Complaint against Defendant McDonald's

Corporation ("McDonald's"), alleges as follows:

## BACKGROUND

        1.     This action seeks a declaratory judgment invalidating

a purported purchase option (the "Purchase Option") contained in a 1976 lease

(the "Lease") between Plaintiff's predecessor, as landlord-owner, and

McDonald's predecessor, as tenant, on the ground that the Purchase Option is

void *ab initio* and unenforceable because it violates the common law rule against

unreasonable restraints on the alienation of property

        2.     Pursuant to the Purchase Option, which McDonald's

recently sought to exercise, McDonald's alleges it has the right to acquire from

Plaintiff a .64 acre parcel of property (the "Property"), together with various

associated easement rights in connection therewith, located on Route 9 in the

Town of Hyde Park, for an unconscionably low, pre-determined price of

$165,000, as fixed three (3) decades ago in 1976.

        3.     As explained below, the Purchase Option should be

declared invalid and unenforceable because it violates the common law rule

against unreasonable restraints on the alienation of property, and therefore, it

cannot be exercised by McDonald's.

## AS AND FOR A FIRST CAUSE OF ACTION,
## PLAINTIFF ALLEGES AS FOLLOWS

### THE PARTIES

4.      Plaintiff is a New York corporation, having a principal place of business located at 54 Garden Street, Poughkeepsie, County of Dutchess, State of New York 12601.

5.      Upon information and belief, Defendant McDonald's Corporation is a Delaware corporation, having a principal place of business located at 1 McDonald's Plaza, Oak Brook, Illinois 60523.

6.      McDonald's transacts substantial business in the State of New York.

7.      The transactions that are the subject matter of this action occurred in the State of New York.

8.      The premises at issue herein are located in the State of New York, County of Dutchess.

### The Lease

9.      Pursuant to the Lease, dated as of the 8th day of June, 1976, Harold Miller, as lessor, leased to Franchise Realty Interstate Corporation, as lessee, premises located on Route 9 in Dutchess County, consisting of approximately .64 acres, and now known as 566 Albany Post Road, Hyde Park, New York (the "Premises"), together with certain easement rights related thereto. A copy of the Lease, together with the Rider to Lease and Supplement to Lease, is annexed hereto and made a part hereof as Exhibit "A".

10.      The Lease was amended by Agreement dated May 23, 1977, and subsequently amended by Agreement dated May 30, 1980. Copies of those Amendments are annexed hereto and made a part hereof as Exhibit "B".

2

C&F: 735859.4

11.     Plaintiff has succeeded as the owner in fee of the Property and Lessor-Landlord under the Lease as to all the rights, title and interest of Lessor.

12.     Upon information and belief, McDonald's has succeeded to all rights, title and interests of Franchise Realty Interstate Corporation under the 1976 Lease.

## The Lease Provides for a Potentially Infinite Duration at the Outset

13.     The Property was unimproved at the time of the Lease execution, and in order to construct the McDonald's restaurant facility, numerous municipal approvals were required to be obtained from State and local authorities.

14.     Paragraph 2 of the Lease, entitled "Permits", provides, in relevant part, that:

> "Lessee has entered into this lease in the expectation of obtaining, after expiration of all applicable appeal periods, all permits, licenses, permissions, and/or other authorizations (hereinafter collectively called "Permits") necessary for the construction upon the demised premises of a complete McDonald's restaurant facility, built according to the Lessee's plans and specifications (including without limitation septic tank(s) and/or sewer disposal system(s), if necessary, parking area(s), sign(s), and any other improvement(s) in connection with said facility deemed necessary or desirable by Lessee), and for the operation of said facility upon the demised premises seven (7) days a week. Lessee agrees to apply for permits without unreasonable delay after execution hereof. Lessee may (but shall not be obligated to) cancel this lease if after first application therefore, permits are denied or are not obtained within one hundred twenty (120) days."

15.     Paragraph 3 of the Lease, entitled "LEASE TERM", provides, in relevant part, that

> "Lessee shall have and hold the demised premises for a term commencing on the date of last execution hereof and ending twenty-one (21) years **from the date upon which said McDonald's Restaurant is open for business to the public.** When the term hereof is ascertainable and

3                                               C&P: 735853.4

> specifically fixed, or otherwise agreed to by Lessor and Lessee, Lessor and Lessee shall enter into a supplement, suitable for recording, which shall specify the actual date for the expiration of the original term of this Lease and for the commencement of accrual of rent payable hereunder by Lessee." (emphasis added).

16. The Lease did not contain any outside date by which "said McDonald's Restaurant" must be "open for business to the public."

17. The Lease did not contain any outside date by which the "Permits", as defined in paragraph 2 of the Lease, were required to be obtained.

18. The zoning and municipal approval contingencies were matters over which the parties did not have ultimate control.

19. That, based on the above, and pursuant to Paragraphs 2 and 3 of the Lease, the duration of the Lease was for a potentially infinite duration at the outset.

20. The potentially infinite duration exceeded the life of both the lessor and lessee under the Lease.

21. In that regard, Paragraph 23(b) of the Lease provides as follows:

> "The terms, conditions and covenants of this Lease shall be binding upon and shall inure to the benefit of each of the parties hereto, their heirs, personal representatives, successors or assigns, and shall run with the land. . ."

22. The Lease did not provide the lessor with any right of cancellation in the event zoning approvals for the "Permits" were not timely obtained.

23. To the contrary, the Lease, at Paragraph 2, explicitly afforded such cancellation right solely in favor of McDonald's.

4

C&F: 735663.4

**The Purported Purchase Option**

24.     Paragraph 17 of the Lease, entitled "OPTION TO PURCHASE AND RIGHT OF FIRST REFUSAL TO PURCHASE", provides, in relevant part as follows:

> "Lessee shall have, and is hereby given, the option of purchasing said demised premises for the sum of one-hundred sixty-five thousand Dollars ($165,000), provided Lessee shall give Lessor notice in writing of its election to exercise said option to purchase any time during the original term or any extension or renewal thereof."

25.     That as noted above, the initial term of the Lease was potentially infinite, but, at a minimum, had a duration of at least twenty-one years from execution of the Lease.  (Lease, ¶ 3).

26.     That, in addition to the initial base term of more than twenty-one years, the Lease further contains purported renewal rights of two successive ten year terms, for a total of twenty additional years.

27.     That, therefore, McDonald's purports to possess a Purchase Option exercisable at any time after Lease execution during what was a potentially indefinite duration from the outset of the Lease.

28.     That by letter dated April 3, 2007, a copy of which is annexed hereto and made a part hereto as Exhibit "C", McDonald's purported to "exercise[] its option to purchase the Premises for the price of $165,000 as set forth in paragraph 17 of the Lease."

29.     Plaintiff rejected McDonald's attempt to exercise the unenforceable and invalid Purchase Option.  A copy of that letter is annexed hereto and made a part hereof as Exhibit "D".

30.     The Purchase Option is invalid because it violates the common law rule against unreasonable restraints on the alienation of property.

C&F: 735853.4

31.     The Purchase Option purported to set a fixed, pre-determined purchase price, of $165,000, as fixed in 1976.

32.     The predetermined price is substantially and unconscionably below the fair market value of the Property.

33.     Upon information and belief, the fair market value of the Property as of the date hereof is at least four hundred percent (400%) greater than the predetermined price, as fixed in 1976, of $165,000.

34.     The fixed, pre-determined price represents a serious and unreasonable interference with the alienability of the Property.

35.     The fixed, pre-determined price did not and does not serve a reasonable purpose.

36.     The Purchase Option contravenes the public policy of favoring the free transfer of property.

37.     The Purchase Option constitutes a substantial and invalid curtailment of the alienability of the Property.

38.     No compelling purpose justified the creation or imposition of the Purchase Option or its enforcement at this time.

39.     Based on the above, Plaintiff respectfully requests a declaratory judgment determining that the Purchase Option constitutes an unreasonable suspension of and restraint upon the alienation of property and, thus, is unenforceable and void *ab initio*, as a matter of law, and further awarding Plaintiff such other and further relief as the Court may deem just and proper, including but not limited to legal fees as provided for in the Lease, costs and expenses incurred herein.

**WHEREFORE,** Plaintiff respectfully requests:

(a)     A declaratory judgment determining that the Purchase Option constitutes an unreasonable suspension of and restraint upon alienation

6

and, thus, is unenforceable and void *ab initio*, as a matter of law, and awarding Plaintiff such other relief as the Court may deem just and proper, including but not limited to legal fees as provided for in the Lease, costs and expenses; and

        **(b)**    An award in favor of Plaintiff of such other, further and different relief as to this Court may seem just and proper.

Dated: White Plains, New York
       May 11, 2007

                **CUDDY & FEDER LLP**
                Attorneys for Plaintiff
                300 Westage Business Center
                Suite 380
                Fishkill, New York 12525
                (845) 896-2229

                By:
                    Joshua E. Kimerling

                **Address for Service of Papers:**
                Cuddy & Feder LLP
                445 Hamilton Avenue
                 14th Floor
                White Plains, New York  10601
                (914) 761-1300

C&F: 735853.4

## **VERIFICATION**

STATE OF NEW YORK     )
                                  ss.:

COUNTY OF DUTCHESS )

      ROBERT L. BAXTER, being duly sworn, deposes and says:

      I am the _Presidery_ of Hydric, Inc., Plaintiff in the above-captioned action and I have read the Verified Complaint and all exhibits and the same is true to my knowledge except as to any information alleged upon information and belief and as to any such information I believe the same to be true based on the books and records which I maintain.

_Robert L. Baxter_
ROBERT L. BAXTER

Sworn to before me this
_7th_ day of May, 2007

_Cheryl L Silverman_
Notary Public

CHERYL L. SILVERMAN
Notary Public, State of NY
Qualified in Ulster County
Reg. No. 01SI6005482
Commission Expires: 4/13/2010

8

C&P: 735853.4

©COPY

McDonald's

McDonald's

**GROUND LEASE**

Exhibit A

THIS LEASE is made and entered into this ____5 th____ day of ____June____ ,
19 76 by and between _____Harold Miller_____ ,
_____ of the City of _____Poughkeepsie_____ ,
County of __Dutchess__ , State of _____New York_____ ,
a _____xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx_____ , hereinafter called
_____ , "Lessor" and ____Franchise Realty Interstate Corporation____
a _____ corporation, hereinafter called "Lessee":

1. *PREMISES:* Lessor, for and in consideration of the covenants hereinafter contained and made on the part of the Lessee, does hereby demise and lease unto Lessee, and Lessee does hereby lease from Lessor, the parcel of land which is located in ____the Town of Hyde Park____ , County of __Dutchess__ , State of ____New York____ , having a frontage of not less than ____125 +____ feet on ____Route 9____ , _____ , containing not less than ____64 + acres____ xxxxxxxx, not including roads or public right of ways, being more particularly described on page 1A attached hereto and made a part hereof, together with all Lessor's easement rights and appurtenances thereto, all buildings and improvements now located thereon, and all necessary easements and appurtenances in Lessor's adjoining and adjacent land, highways, roads, streets, lanes, whether public or private, reasonably required for the installation, maintenance, operation and service of sewers, water, gas, drainage, electricity and other utilities and for drive-ways and approaches to and from abutting highways for the use and benefit of the above described parcel of real estate, including the improvements to be erected thereon. If Lessee has the demised premises surveyed, then, at Lessee's option, the parties shall execute a recordable amendment by which a survey description shall be inserted herein in lieu of the description contained on page 1A, but Lessee shall not be obligated to lease less than is described above. Notwithstanding the aforesaid, lessee shall have no rights in Lessors adjacent lands unless specifically set with herein.

2. *PERMITS:* Lessee has entered into this lease in the expectation of obtaining, after expiration of all applicable appeal periods, all permits, licenses, permissions, and/or other authorizations (hereinafter collectively called "Permits") necessary for the construction upon the demised premises of a complete McDonald's restaurant facility, built according to Lessee's plans and specifications (including without limitation septic tank(s) and/or sewer disposal system(s), if necessary, parking area(s), xxxxxxxx, sign(s), and any other improvement(s) in connection with said facility deemed necessary or desirable by Lessee), and for the operation of said facility upon the demised premises seven (7) days a week. Lessee agrees to apply for permits without unreasonable delay after the execution hereof. Lessee may (but shall not be obligated to) cancel this lease if after first application therefore, permits are denied or are not obtained within one hundred twenty (120) days.

3. *LEASE TERM:* Lessee shall have and hold the demised premises for a term commencing on the date of last execution hereof and ending twenty/(21) years from the date upon which said McDonald's Restaurant is opened for business to the public. When the term hereof is ascertainable and specifically fixed, or otherwise agreed to by Lessor and Lessee, Lessor and Lessee shall enter into a supplement, suitable for recording, which shall specify the actual date for the expiration of the original term of this Lease and for the commencement of accrual of rent payable hereunder by Lessee. Notwithstanding the term as defined herein, Lessee shall have six months in which to obtain all municipal approvals without liability for rent. The option of Lessee, an additional period of three (3) months shall be *

4. *RENT:* Lessee's liability for rent shall commence to accrue on the date when the **/ McDonald's Restaurant opxxxxxxxx is granted site plan approval, subject to the provisions of paragraph "5" of this lease.

These covenants and agrees to pay to Lessor as rent for said demised premises the sum of ____TEN THOUSAND EIGHT HUNDRED_____

DOLLARS ($ __10,800.00--------------------)per annum payable as follows: In equal monthly installments of ____NINE HUNDRED----------------- DOLLARS ($ __900.00---------------------) per month, payable one each on the 15th day of every calendar month for the then current month. In the event that that commencement date of said rent shall be on a day other than the first day of the month, the first rental payment and last rental payment, if applicable, shall be adjusted for the proportionate fraction of the whole month. For the eleventh (11th) through fifteenth (15th) year the rent shall $12,420 annually, payable in equal monthly installments. For the sixteenth 6th) through twenty-first (21st) year, the rent shall be $13,351.50, annually, yable in equal monthly installments.

granted by Lessor for such purpose provided Lessee pay $450 per month as rent til final approval is received whereupon full rent shall be due and payable rsuant to the terms of paragraph "4".

when all contingencies of the Lease, including paragraph "5", have been satisfied.

-1-

McD-GL-5/75

May 26, 1976

### PORTION OF THE LANDS OF HAROLD MILLER

Beginning at a point in the easterly line of Route 9 the said point being the northwesterly corner of the herein described parcel and being S 1° 03'50" E 83.64' from the northwesterly corner of lands of Harold Miller and the southwesterly corner of lands of Joseph H. Mesuda; thence thru the lands of Harold Miller along the northerly line of the herein described parcel S 88° 08'50" E 210.19' to the northeasterly corner of the herein described parcel being a point in the westerly line of a future interior access road running in a north – south direction within the proposed shopping center; thence still thru the lands of Harold Miller along the easterly line of the herein described parcel along the westerly line of the above mentioned future interior access road S 1° 03'50" E 130.00' to the southeasterly corner of the herein described parcel being the point of intersection of the westerly line of the above mentioned future interior access road with the northerly line of a future entrance road from Route 9; thence still thru the lands of Harold Miller along the southerly line of the herein described parcel along the northerly line of the future entrance road from Route 9 following in part a portion of existing curb N 89° 30'40" W 184.94' and along a curve to the right on a radius of 30.00' a distance of 30.38' to the southwesterly corner of the herein described parcel being the point of intersection of the northerly line of the abovementioned entrance road with the easterly line of Route 9; thence along the westerly line of the herein described parcel along the easterly line of Route 9 N 1° 03'50" W 120.89' to the point or place of beginning and containing 0.64 acres more or less.

Subject to a water line easement 10' in width granted to the Hyde Park Fire and Water District, the location of said easement being shown on the accompanying plan.
Together with the parking rights as is set forth on Rider A attached hereto and made a part hereof.

. CONDITIONS OF LESSEE'S PERFORMANCE: The parties agree that the following
hall be conditions of the lease and in the event any of such conditions are
acking or cannot be provided at reasonable cost to Lessee, this lease, at
essee's option shall terminate and be null and void.
~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
XXXXXXXXXXXXXX~~

assist lessee, at lessee's cost and expense to

A. That Lessor shall, if necessary, use its best efforts to obtain the approval of all public or
governmental authorities as to all matters relating to zoning, subdivision, lot splits, special use
permits or similar requirements for use of the demised premises as a McDonald's Restaurant in
accordance with Lessee's plans and specifications as will permit the Lessee to obtain all necessary
permits, licenses and approvals referred to in Article 2 above; ~~and that Lessor shall pay and bear all~~
~~costs for any offsite improvements and dedicate any easements required by any public authority as~~
~~a condition to the granting of any such approvals.~~ Lessor and Lessee will equally bear the
oost of ~~of having access roads to the south and~~ east of the demised premises accord-
ng to a certain Master Plan of Lease of Lessor annexed. Lessor shall maintain such
oads. ~~B. That all water and gas mains, electric power lines, sanitary and storm sewers are located~~
at the property line, in the public right-of-way, of the demised premises and are available and
adequate for Lessee's intended use; ~~or, if the same are not available and adequate, Lessor agrees to~~
~~extend utilities meeting Lessee's specifications to the demised premises within thirty (30) days from~~
~~the date Lessee notifies Lessor that all necessary permits and approvals have been obtained and~~
~~Lessee delivers its plans and specifications therefore.~~  SEE page "2A"

C*

~~G. That Lessor shall demolish and remove all existing improvements, encroachments, signs~~
~~and underground storage tanks, if any, located on the demised premises and shall fill, grade,~~
~~compact and construct retaining walls to Lessee's specifications required by Lessee to make the~~
~~demised premises ready for the construction of Lessee's improvements, all of which shall be~~
~~completed within thirty (30) days from the date that Lessee notifies Lessor that all necessary~~
~~permits and approvals have been obtained and Lessee delivers its plans and specifications therefore.~~
~~D~~ Lessee shall erect retaining wall at north end of premises, shall protect
is~~lng~~ shrubbery and replace the same if destroyed by construction
D. That the demised premises are free and clear of all tenancies, whether oral or written,
located at said north end of premises. MM  and that Lessee shall have sole and actual possession from the date of execution hereof.

E. That Lessor shall pay, bear, and discharge all future real estate taxes and special
assessments charged or imposed upon the demised premises or any improvements erected thereon
by Lessee, or anyone claiming by, through, or under it, or upon the owner or occupier in respect
thereof during the term of this lease or any extension thereof and to deliver promptly to Lessee at
all times proper and sufficient receipts and other evidence of the payment and discharge of the
same. This provision shall apply until Lessee receives its certificate of
'ccupancy but no later than June 1977, whereupon Lessee shall pay all such taxes
nd charges. If partial construction results in increased taxes, Lessee shall pay
uch*** Lessor hereby acknowledges that Lessee is relying upon said covenants, representations and
ndition~~,~~ warranties in executing this Lease and that matters ~~of title, zoning~~ and warranties are material ones.
Lessor, accordingly, agrees that any ~~failure, where applicable, misrepresentation~~ shall be grounds for
Lessee to elect, at its option, to terminate this Lease or cure ~~Lessor's failure~~ and deduct its costs
to cure said defaults from rent thereafter accruing. These remedies are in addition to all other
remedies Lessee may have in law or equity.
. Lessee agrees to furnish Lessor with copies of all tax receipts within
orty-five (45) days after such tax is due without penalty.

6.    LIENS AND ENCUMBRANCES: Subject to paragraphs 10, 11 and 21 herein, Lessee
covenants not to suffer the estate of Lessor in the demised premises at any time during the said
term to become subject to any lien, charge, or encumbrance whatsoever, and to indemnify and keep
indemnified Lessor against all such liens, charges and encumbrances; it being expressly agreed that
Lessee shall have no authority, expressed or implied, to create any lien, charge, or encumbrance
upon the estate of Lessor in the demised premises. Lessee shall, upon demand of Lessor,
ond any ~~mechanic's liens or judgments~~ recorded against the premises or Lessor with-
n two (2) weeks of such notice or in default thereof, Lessor may do so and add
he cost and fees as rent.
7.    INSURANCE: Lessee covenants and agrees at its own expense to insure and keep
insured the building or buildings thereon against loss or damage by fire and by extended coverage
for not less than eighty percent (80%) of their replacement value in responsible insurance companies
licensed in the state in which the premises are located, subject to the terms of paragraph 8 hereof,
such insurance to be made payable in case of loss to Lessee.

Lessee shall also maintain and keep in force for the mutual benefit of Lessor and Lessee
general public liability insurance against claims for personal injury, death, or property damage
occurring in, on or about the demised premises or sidewalks or premises adjacent to the demised
premises to afford protection to the limit of not less than 1 million in respect to injury or death
of a single person and to the limit of not less than 1  million in respect to any one accident and
to the limit of $100,000 in respect to property damage. Lessee shall deliver to Lessor a certificate
of said insurance and of renewals thereof from time to time during the term of this Lease, but no
.ess frequently than every three (3) years.

8.    DAMAGE TO OR DESTRUCTION OF IMPROVEMENTS: If the building on the
demised premises shall be rendered untenantable by fire or other casualty during the last five (5)
years of the original term of this Lease or during any extension of the term, to the extent of 50% or
more of the insurable value of the building, Lessee may, at Lessee's option, to be evidenced by
notice in writing given to Lessor within thirty (30) days after the occurence of such damage or
destruction, elect to terminate this Lease as of the date of the damage or destruction, whereupon
5.C.  Lessee accepts the site "as is". Lessee agrees to fill and grade the pre-
niss and construct curbs and sidewalks at the South and east boundaries. In
ddition, Lessee will bring a manhole area near the north boundary up to grade
nd will maintain and keep it clean. ~~In consideration thereof Lessee shall not~~
~~e obligated to pay rent for the twelfth month of the term of this Lease.~~

The parties recognize the Lessee would be unable to utilize the property herein unless it can design a septic system necessary to satisfy its requirements.  This Lease is therefore contingent upon the Lessee being able to design a septic system for which all necessary governmental approvals can be obtained which will satisfy the Lessee's requirements. In the Lessee's determination as to whether a system can so be designed to satisfy its requirements the Lessee may take into consideration the cost of construction.  The Lessee shall analyze the soil tests which it shall take pursuant to paragraph "19B" and in the event that within 45 days after receipt of said soil tests, the Lessee determines that a septic system cannot be so designed at a reasonable cost of construction or that the Lessee be unable to obtain all necessary approvals for said system, then the Lessee shall have a right to cancell this Lease Agreement by giving Lessor written notification as is provided for herein.

The access road to be  paved according to paragraph 5A is that roadway shown on the master plan immediately adjoining the demised premises to a distance of 225 feet being that driveway outlined in black upon said plan.  Said work is to be done by the Lessee who shall, upon completion of the work, bill the Lessor for one-half (½) the cost of the same, which the Lessor has hereby agreed to pay upon receipt and in the event that the Lessor shall fail to pay said amount, the Lessee may deduct the same from the rental which would become due and owing to the Lessor.

In the event Lessee exercises its right to terminate this lease as herein set forth, Lessor shall have the right for 45 days after Notice of Cancellation, at his cost, to assist Lessee and Lessee's engineers, if any, in the design and cost of an adequate septic system as herein defined.  Lessee shall cooperate with Lessor in this regard.

-2A-

Lessee shall pay to Lessor from the proceeds of its building insurance an amount equal to the lesser of the then present value of the remaining reserved rent as of the date of the casualty or all of the proceeds of the insurance and the right of recovery against insurers on policies covering such damages or destruction. Lessor shall also be entitled to payment for the reasonble cost of demolition in the event lessee elects to terminate the lease. In he event lessee elects to rebuild, rent, but not taxes shall abate for six (6) onths or until the time the restaurant is operational, whichever shall first occur

9. USE, ALTERATIONS AND TITLE TO IMPROVEMENTS: Notwithstanding any other provisions herein to the contrary, Lessee shall have the right to use and/or occupy the demised premises for any lawful purpose or purposes and to make, or permit any Sublessee to make, alterations, additions and improvements to the demised premises from time to time, and all of such alterations, additions and improvements constructed by Lessee during the term of this Lease and any extension thereof, shall be and remain the property of the Lessee or Sublessee, as the case may be, at all times during the term of this Lease and any extensions or renewals thereof. Lessee and any Sublessee shall have the right to remove any such alterations, additions and improvements at any time during the term of this Lease or any extension or renewal thereof, and for a period of thirty (30) days after the termination of this Lease, or any extension or renewal thereof, by lapse of time or otherwise and, for such purpose, to enter upon the premises. However, Lessee shall not be required to remove any such alterations, additions or improvements, and Lessee's failure to do so after the expiration of such period of thirty (30) days shall be deemed to be an abandonment thereof whereby the same shall, thereupon, be and become part of the real estate with title thereto vesting in the owner of the land. In case of removal of any building by Lessee or any Sublessee occurring at or after the termination of this Lease, as aforesaid, Lessee shall level the area formerly occupied by any building so removed. Lessee shall not, at the termination of this ease, remove the building, but shall be entitled to remove trade fixtures as foresaid provided no material damage is done to the building.

10. ASSIGNMENT AND SUBLETTING: Lessee may, without the consent of Lessor, sublease or assign this Lease or its rights hereunder. In such event Lessee shall remain liable for the payment of all rent required to be paid hereunder and for the performance of all terms, covenants and conditions herein undertaken by Lessee. Without limitation, it is agreed that Lessee shall have the right to mortgage or otherwise encumber its leasehold interest. Lessee shall not sublease r assign this lease to a competitor of the retail stores immediately to the orth or south of the demised premises.

11. MORTGAGING OF LEASEHOLD ESTATE: In the event that Lessee shall mortgage its leasehold estate and the mortgagee or holders of the indebtedness secured by the leasehold mortgage or trust deed shall notify Lessor, in the manner hereinafter provided for the giving of notice, of the execution of such mortgage or trust deed and name the place for service of notice upon such mortgagee or holder of indebtedness, then, in such event, Lessor hereby agrees for the benefit of such mortgagees or holders of indebtedness from time to time:

A. That Lessor will give to any such mortgagee or holder of indebtedness simultaneously with service on Lessee a duplicate of any and all notices or demands given by Lessor to Lessee from time to time. Such notices shall be given in the manner and be subject to the provisions of paragraph 23(E) of this Lease. Lessor shall not be liable for failure to provide uch notices if lessee fails to inform lessor in writing of any change in identity, iame or address of such mortgagee.

B. Such mortgagee or holder of indebtedness shall have the privilege of performing any of Lessee's covenants hereunder or of curing any default by Lessee hereunder or of exercising any election, option or privilege conferred upon Lessee by the terms of this Lease.

C. That Lessor shall not terminate this Lease or Lessee's right of possession for any default of Lessee if within a period of twenty (20) days after the expiration of the period of time within which Lessee might cure said default under the provisions of paragraph 12 of this Lease, such mortgagee or holder or indebtedness commences to eliminate the cause of such default and proceeds therewith diligently and with reasonable dispatch as in said paragraph 12 provided.

D. That, except for the rights to terminate contained in paragraphs 2 5, and 19 of this Lease, no right, privilege or option to cancel or terminate this Lease available to Lessee shall be deemed to have been exercised effectively unless joined in by any such mortgagee or holder of the indebtedness.

E. No liability for the payment of rental or the performance of any of Lessee's covenants and agreements hereunder shall attach to or be imposed upon any mortgagee, trustee under any trust deed or holder of any indebtedness secured by any mortgage or trust deed upon the leasehold estate, all such liability being hereby expressly waived by Lessor.

12. LESSOR'S RIGHT OF RE-ENTRY: If Lessee shall fail to pay any installments of rent promptly on the day when the same shall become due and payable hereunder, and shall continue in default for a period of thirty (30) days after written notice thereof by Lessor, or if Lessee shall fail to promptly keep and perform any other affirmative covenants of this Lease strictly in accordance with the terms of this Lease and shall continue in default for a period of thirty (30) days after written notice thereof by Lessor of default and demand of performance, then and in any event, and as often as any such event shall occur, Lessor may (a) Declare the said term ended, and enter into

-3-

said demised premises, or any part thereof, either with or without process of law, and expel Lessee or any person occupying the same in or upon said premises, using such force as may be necessary to do so, and so to repossess and enjoy said premises as in Lessor's former estate; and/or (b) Re-let the premises, applying said rent from the new tenant on this Lease, and Lessee shall be responsible for no more than the balance that may be due, should a balance exist. Anything hereinbefore contained to the contrary notwithstanding, if any default shall occur other than in the payment of money, which cannot with due diligence be cured within a period of thirty (30) days, and Lessee, prior to the expiration of thirty (30) days from and after the giving of notice as aforesaid, commences to eliminate the cause of such default, then the Lessor shall not have the right to declare the said term ended by reason of such default.

**13.** · *HOLDING OVER:* In the event Lessee continues to occupy the premises after the last day of the term hereby created, or after the last day of any extension of said term, and the Lessor elects to accept rent thereafter, a tenancy from month to month only shall be created and not for any longer period. ·

**14.** *CONDEMNATION:* If the whole or any part of the demised premises shall be taken or condemned by any competent authority for any public use or purpose during the term of this Lease, Lessee reserves unto itself the right to claim and prosecute its claim in all appropriate courts and agencies for an award or damages based upon its leasehold interest and ownership of buildings, alterations and improvements for such taking without impairing any rights of Lessor for the taking of or injury to the reversion.

In the event that a part of the demised premises shall be taken or condemned which, in the sole judgment of Lessee, is sufficient to render the remaining portion thereof unsuitable for its continued use or occupancy, then and in any such event, Lessee may at any time, either prior to or · within a period of sixty (60) days after the date when possession of the premises shall be required by the condemning authority, elect to terminate this Lease, or, if an option to purchase the premises is conferred upon Lessee by any other provision of this Lease, may as an alternative to such termination of this Lease elect to purchase the demised premises in accordance with such purchase option, except that there shall be deducted from the purchase price to be paid for the premises all of Lessor's award from the condemnation proceeding. In the event that Lessee shall fail to exercise any such option to terminate this Lease or to purchase the premises, then and in either such event this Lease shall continue in effect with respect to the portion of the demised premises not so taken except that the annual rent payable herein shall be reduced by a fraction, the numerator of which shall be the number of square feet taken or condemned and the denominator of which shall be the square footage of the demised premises prior to the taking or condemnation. Lessee will, with all due diligence and at its own cost and expense, repair and restore the demised premises or what may remain thereof to their former condition, and until the completion of such work, the obligation of Lessee to pay rent and real estate taxes shall abate.

Provided Lessee is not in default of the provisions hereof
**15.** *OPTION TO EXTEND:* Lessor does hereby grant to Lessee the right, privilege, and option to extend this Lease for a period of __TEN__ ( 10 ) years from the date of expiration hereof, upon the same terms and conditions as herein contained, upon notice in writing to Lessor of Lessee's intention to exercise said option, given at least ninety (90) days prior to the expiration of the term hereof. Provided Lessee is not then in default thereof, and

In the event that Lessee shall have exercised said option to extend the term of this Lease, Lessor does hereby grant to Lessee the right, privilege and option again to extend this Lease for ( 1 ) successive periods of __TEN__ ( 10 ) years each, upon the same terms and conditions as herein contained, upon notice in writing to Lessor of Lessee's intention to exercise each said option, given at least ninety (90) days prior to the expiration of the preceding extension of the term hereof. The rent at the inception of the lrst extension period shall be seven and one half ( 7 1/2) per cent greater than he rent for the immediately preceding month. The rent shall increase by seven nd one half ( 7 1/2%) per cent every-five (5) years during both option periods.

**16.** *LESSEE'S RIGHT OF FIRST REFUSAL TO LEASE:* If at any time during the term of this Lease, Lessor shall desire to accept a bona fide offer received by it to lease the premises for a term commencing at or after the expiration of the term of this Lease, Lessor shall notify Lessee of such offer in the manner provided in this Lease for the giving of notice, (said notice shall include executed copies of all relevant documents and the name and address of the offeror) and Lessee shall have the right to relet the premies upon the terms and conditions of such offer by giving Lessor written notice of its election to do so within fifteen (15) days after receipt of Lessor's notice. In the event Lessee fails to notify Lessor of its election within the fifteen (15) day period, Lessor shall have the right to lease the premises to any person upon the terms and conditions contained in said notice to Lessee.

-4-

*This purchase.*
*is on rental in front*
*Rent is requested over flow.*

17.    *OPTION TO PURCHASE AND RIGHT OF FIRST REFUSAL TO PURCHASE:* Lessee shall have, and is hereby given, the option of purchasing said demised premises for the sum of One hundred sixty-five thousand DOLLARS ($165,000.) provided Lessee shall give Lessor notice in writing of its election to exercise said option to purchase any time during the original term or any extension or renewal thereof.

It is further agreed that should Lessor, or Lessor's heirs, executors, successors or assigns, at any time during the term of this Lease or any extension thereof, receive an offer to purchase the demised premises or any part thereof, and Lessor desires to accept said offer; or should Lessor during any such time make an offer to sell the demised premises or any part thereof, Lessor shall give Lessee thirty (30) days notice in writing of such offer setting forth the name and address of the proposed purchaser with executed copies of all relevant documents, the amount of the proposed purchase price, and all other terms and conditions of such offer; and Lessee shall have the first option to purchase the premises which are the subject of the offer by giving written notice to Lessor of its intention to purchase within said thirty (30) day period at the same price and on the same terms of any such offer, it being understood that in the event Lessee does not give notice of its intention to exercise said option to purchase within said period, this Lease and all of its terms and conditions shall nevertheless remain in full force and effect and Lessor and any Purchaser or Purchasers of the demised premises, shall be bound thereby. In the event that the premises set forth in the offer are or are not sold, Lessee shall have, upon the same conditions and notice, the continuing first option to purchase the demised premises or any part thereof, upon the terms of any subsequent offer or offers to purchase.    This provision shall not apply if such bona fide offer would not be contingent upon purchasers ability to obtain approval for the subdivision of the demised premises.

In the event any of the foregoing options are exercised, Lessor shall convey a merchantable or's acts title in fee simple to said real estate by good and sufficient stamped warranty deed, with release of dower, homestead, curtesy and other rights of the respective spouses, if any, and free from all encumbrances whatsoever. In addition, in the exercise of such options, all monies shall be placed with an "escrowee" of Lessee's designation and the "settlement" of the purchase price and the conveyance to Lessee shall take place in escrow. Within thirty (30) days of the date of exercise of any such option, Lessor will furnish to Lessee a guarantee title policy issued by a title insurance company acceptable to Lessee, in its usual form, brought down to said date of exercise; guaranteeing Lessee against loss or damage to the extent of the purchase price by reason of defects in or liens upon Lessor's title, subject only to the usual exceptions contained in guarantee title policies of the issuing company. Settlement of the purchase price and conveyance to the Lessee shall be made within ninety (90) days from said date of exercise. Taxes, utilities, rents, and other current expenses, shall be adjusted as of the date Lessee exercises its option, acquires title. Lessee shall obtain all title insurance, at its own expense, that it deems necessary.

In the event there are any conflicts between the terms in this lease concerning the exercise of the aforementioned option involving the right of first refusal and the terms contained in the offer which Lessee must accept if Lessee desires to purchase said demised premises, then the terms of this Lease shall control and supersede those contained in such offer.

18.    *COVENANT OF TITLE AND QUIET ENJOYMENT:* Lessor covenants that Lessor is well seized of and has good title to the leased premises free and clear of all liens, encumbrances and restrictions. Lessor warrants and will defend the title thereto, and will indemnify Lessee against any damage and expense which Lessee may suffer by reason of any lien, encumbrance, restriction or defect in the title or description herein of the premises. If, at any time, Lessor's title or right to receive rent hereunder is disputed, or there is a change of ownership of Lessor's estate by act of the parties or operation of law, Lessee may withhold rent thereafter accruing until Lessee is furnished proof satisfactory to it as to the party entitled thereto.

19.    *ADDITIONAL CONTINGENCIES:*

A.    *EVIDENCE OF TITLE:* Within thirty (30) days from the date of last execution of this Lease, Lessee shall apply for leasehold title insurance from a title company acceptable to Lessee, in the amount of not less than ONE HUNDRED AND FIFTY THOUSAND and No/100 ($150,000.00) DOLLARS, or that required by law or the title insurer, covering the date hereof, showing title in Lessor. If the report on title, title binder, or commitment, so required, discloses any defects in title (other than such usual objections contained in Leasehold policies and matters to which this Lease is subject) Lessor shall have sixty (60) days from the date which such title report, binder, or commitment bears to cure such defects and to furnish such title report, binder, or commitment showing such defects cured or removed. If such defects in title are not so cured within sixty (60) days, Lessee may, at its option, terminate this Lease. In the event this Lease is so terminated all monies, deposits and instruments shall be returned to the respective parties. Immediately, upon final execution of this Lease, Lessor shall deliver to Lessee's title company, if so required, all prior title evidence such as title policies, abstracts, or attorney's opinions. A certain easement granted by Manley Behrens to the Hyde Park Fire and Water District, shall not constitute a defect in title, and Lessee accepts the premises subject thereto, unless within sixty (60) days from the date of last execution of this Lease, Lessee shall declare the Lease null and void based upon its inability to utilize the premises due to such easement. The parties further agree that if patching of the drive-way or parking area is necessary after repair to the water pipes by the District, the parties will equally bear such cost. A copy of said easement is annexed.

-5-

**B.**    *BORING AND PERCOLATION CONTINGENCIES:* This Lease is further contingent upon Lessee obtaining within sixty (60) days from the date hereof such boring and percolation tests as may be required to determine the physical characteristics, including the water table of sub-strata, of the premises in question. In the event such reports indicate, in Lessee's sole judgment, that the premises are unsatisfactory for Lessee's intended use, Lessee may, at its option, declare this Lease to be null and void and of no further force and effect. In the event Lessee exercises its right to terminate this Lease under this paragraph, Lessee shall not be liable to Lessor for any claims in law or equity arising from said termination.

**C.**    *TOPOGRAPHICAL SURVEY:* Lessee may order a current certified topographical survey by a licensed surveyor within thirty (30) days from the last execution of this Lease. Said topographical survey shall show:

(a) The area, dimensions and location of the property;
(b) Its topography;
(c) The location of existing improvements and available utilities in adjoining streets, alleys or property;
(d) The location of all recorded easements against or appurtenant to the property;
(e) Encroachments of any improvements adjoining the premises on the demised premises; and
(f) The legal description of the premises.

If said survey discloses unsuitable or interfering easements or encroachments or that the location, area, dimensions and shape of the demised premises are not as represented by Lessor, then Lessee shall have the right to terminate this Lease and declare same null and void and of no force and effect.

~~Lessee shall be entitled to reimbursement from Lessor, either as a credit against rent or ty cash payment, for all title examination costs and premiums, survey fees and boring and~~ ~~percolation tests costs.~~ ----Lessor has provided a perimeter survey and metes and ounds description, annexed. Lessor shall not be liable for any other costs nvolved in establishing Lessee's site plan.

20.    *TRADE FIXTURES, MACHINERY AND EQUIPMENT:* Lessor agrees that all trade fixtures machinery, equipment, furniture or other personal property of whatever kind and nature kept or installed on the leased premises by Lessee's subtenants shall not become the property of Lessor or a part of the realty no matter how affixed to the leased premises and may be removed by Lessee's subtenants, in their discretion, at any time and from time to time during entire term of this Lease and any renewals. Upon request of Lessee or Lessee's assignees or any subtenant, Lessor shall execute and deliver any Real Estate Consent or Waiver forms submitted by any Vendors, Lessors, Chattel Mortgagees or holders or owners of any trade fixtures, machinery, equipment, furniture or other personal property of any kind and description kept or installed on the demised premises by any subtenant setting forth the fact that Lessor waives, in favor of such Vendor, Lessor, Chattel Mortgagee or any holder or owner, any lien, claim, interest or other right therein superior to that of such Vendor, Lessor, Chattel Mortgagee, owner or holder. Lessor shall further acknowledge that property covered by such Consent to Waiver forms is personal property and is not to become a part of the realty no matter how affixed thereto and that such property may be removed from the leased premises by the Vendor, Lessor, Chattel Mortgagee, owner or holder at any time upon default by the subtenant in the terms of such Chattel Mortgage or other similar documents, free and clear of any claim or lien of Lessor.    Removal of fixtures shall be limited to items not uilt into walls, floors or ceiling. Lessee may remove decorative partitions. essee shall repair material damage.

21.    *MORTGAGE CONTINGENCY AND SUBORDINATION:* Lessor further agrees that it will, upon written demand by Lessee, execute such instruments as may be required at any time and from time to time to subordinate the rights and interest of Lessor in the fee to the lien of a first mortgage, mortgages, trust deed, or trust deeds now or hereafter at any time placed by Lessee on the premises herein demised, such mortgage or mortgages not to exceed the total sum of  TWO HUNDRED THOUSAND ------------------------------DOLLARS ($ 200,000.00  ) and such mortgage or mortgages to be payable in full within the term, or any extension thereof, of this Lease. If required by the lending institution, Lessor further agrees to join in the execution of such documents as may be necessary but shall not thereby incur any personal liability. The proceeds of any indebtedness secured hereunder shall be applied to new construction, only. All loans shall be placed with a bank, life insurance company or other institutional lender.

22.    *RECORDING:* Lessee and Lessor agree to execute and record a short form or memorandum of this Lease as soon as Lessee has obtained an approved survey and legal description of the demised premises. The cost of all documentary stamps, or conveyancing, transfer tax and recording fees shall be paid ~~equally by the parties hereto.~~ by Lessee.

-6-

23.    MISCELLANEOUS PROVISIONS:

A. If any term or provision of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Lease, or the application of such term or provision to persons whose circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby.

B. The terms, conditions and covenants of this Lease shall be binding upon and shall inure to the benefit of each of the parties hereto, their heirs, personal representatives, successors, or assigns, and shall run with the land; and where more than one party shall be Lessors under this Lease, the word Lessor whenever used in this Lease shall be deemed to include all parties hereto jointly and severally.

C. No waivers, alterations or modifications of this Lease or any agreements in connection therewith shall be valid unless in writing duly executed by both Lessor and Lessee herein.

D. The captions appearing in this Lease are inserted only as a matter of convenience and in no way define, limit, construe or describe the scope or intent of such Paragraphs of this Lease or in any way effect this Lease. Any gender used herein shall be deemed to refer to any other gender more grammatically applicable to the party to whom such use of gender relates. The use of singular herein shall be deemed to include the plural and, conversely, the plural shall be deemed to include the singular.

E. If at any time after the execution of this Lease, it shall become necessary or convenient for one of the parties hereto to serve any notice, demand or communication upon the other party, such notice, demand or communication shall be in writing signed by the party serving the same, deposited in the registered or certified United States mail, returned receipt requested, postage prepaid and (a) If intended for Lessor shall be addressed to:

                    Mr. Harold Miller
                    85 Market Street
                    Poughkeepsie, New York      12601

and (b) If intended for Lessee shall be addressed to:

                    McDonald's Plaza
                    Oak Brook, Illinois 60521

or to such other address as either party may have furnished to the other in writing as a place for the service of notice. Any notice so mailed shall be deemed to have been given as of the time the same is deposited in the United States mail.

F. In the event that at any time during the term of this Lease either the Lessor or the Lessee shall institute any action or proceeding against the other relating to the provisions of this Lease, or any default hereunder, then, and in that event, the unsuccessful party in such action or proceeding agrees to reimburse the successful party for the reasonable expenses of attorneys' fees and disbursements incurred therein by the successful party.

24.----RULE AGAINST PERPETUITIES: If this Lease has not been previously terminated pursuant to the terms and provisions contained herein, and the term of this Lease and/or the commencement date for rent hereunder shall not have been ascertained within five (5) years from the date appearing on Page 1 of this Lease, then and in that event this Lease shall thereupon become null and void and have no further force and effect whatsoever in law or equity.

25.    CONFLICT OF INTERESTS: The Lessor and (if Lessor is not an individual) the party(ies) executing this Lease for or on behalf of the Lessor, or as a representative of the Lessor, hereby represent that, to the best of his/her/their knowledge, he/she/they, or any person connected directly or indirectly, with the Lessor is/are not (an) agent(s), employee(s), servant(s), supplier(s), licensee(s) or officer(s) of the Lessee or any subsidiary, affiliate or parent corporation thereof, or related to any agent, employee, servant, supplier, licensee or officer of the Lessee or any subsidiary, affiliate or parent corporation thereof. The Parties executing this Lease acknowledge that the foregoing representations are and shall be relied upon by the Lessee as inducement to enter into this Lease.

26.    RIDERS AND EXHIBITS: This Lease includes the following Rider(s) and/or Exhibits, which shall take precedence over conflicting provisions (if any) of this Lease, and are hereby made an integral part of this Lease and fully incorporated herein by reference:

                    Property description, Master Plan and Easement
    Lessee agrees to make diligent application for site plan approval immediately on execution of this lease. Lessee agrees to comply with all reasonable anning Board requisites in connection therewith.

-7-

IN WITNESS WHEREOF, the parties have hereunto set their hands and seals.

LESSOR:                                    LESSEE:

_____ (seal)     BY: _____
                                           Vice President

_____ (seal)     ATTEST:

_____ (seal)     _____
                                           Assistant Secretary

DATE OF                                    DATE OF
EXECUTION: ___June___ 8 _1976_     EXECUTION: ___June_____ ,1976

WITNESS:                                   WITNESS:

_____            _____

_____            _____

(APPEND ACKNOWLEDGEMENTS)

-8-

STATE OF Illinois     :   COUNTY OF    Cook       :ss

On the 30th      day of June, 1976, before me personally

came  Luigi Salvaneschi and Robert B. Ryan _____,to me known,
who by me duly sworn, did depose and say that they resides at

No. 23 W 081 Black Cherry Land, Glen Ellyn, Ill., and 1531 Basswood Cir., Glenview,
       are     Vice President and Asst. Vice- _____ [Ill., respectively]
that they is the/President, respectively      of FRANCHISE REALTY INTER-
STATE CORPORATION, the corporation mentioned in, and which executed,
the foregoing instrument; that he knows the seal of said corpora-
tion; that the seal affixed to said instrument is such corporate
seal; that it was so affixed by order of the Board of Directors of
said corporation; and that he signed his name thereto by like
order.

My Commission Expires Jan. 11, 1979

                                          Notary Public

STATE OF NEW YORK:.    COUNTY OF DUTCHESS:    ss:

On the      8th day of June, 1976, before me personally

came HAROLD MILLER, to me known and known to me to be the individ-
ual described in, and who executed, the foregoing instrument,
and he acknowledged to me that he executed the same.

                                          Notary Public
                                          Notary Public in the State of New York
                                          Residing in Dutchess County
                                          Commission Expires March 30, 19 78

        IN CONSIDERATION of the letting of the premises within

mentioned to the within named Lessee and the sum of $1.00 paid to

the undersigned by the within named Lessor, the undersigned

does hereby covenant and agree, to and with the Lessor and the

Lessor's legal representative, that if default shall at any time

be made by the said Lessee in the payment of the rent and the

performance of the covenants contained in the within lease, on

the Lessee's part to be paid and performed, that the undersigned

will well and truly pay the said rent, or any arrears thereof,

that may remain due unto the said Lessor, and also pay all

damages that may arise in consequence of the non-performance of

said covenants, or either of them without requiring notice of

any such default from the said Lessor.  The undersigned hereby

waives all right to trial by jury in any action or proceeding here-
inafter instituted by the Lessor, to which the undersigned
may be a party.

IN WITNESS WHEREOF, the undersigned has set its hand and
seal this   30th   day of ~~June~~ July, 1976.

McDONALD'S CORPORATION

By:   _Luigi Salvaneschi_

STATE OF   Illinois        :COUNTY OF   Cook        :ss

On the 30th   day of ~~June~~ July, 1976, before me personally

came    _Luigi Salvaneschi_                          ,to me known,
who by me duly sworn, did depose and say that he resides at

No. 23 W 081 Black Cherry Lane, Glen Ellyn, Ill.

that he is the    Vice-President    of McDONALD'S CORPORATION,

the corporation mentioned in, and which executed, the foregoing
instrument; that he knows the seal of said corporation; that
the seal affixed to said instrument is such corporate seal; that
it was so affixed by order of the Board of Directors of said
corporation; and that he signed his name thereto by like order.

My Commission Expires Jan. 31, 1977          Notary Public

RIDER to Lease dated June 8, 1976 by and between HAROLD MILLER, as Lessor, and FRANCHISE REALTY INTERSTATE CORPORATION, as Lessee.

1. In addition to the demised premises set forth on page 1A, the Lessor does hereby grant to the Lessee the following rights for that property set forth in the Supplement of Lease attached hereto and made a part hereof:

1) The Lessee shall have the right of ingress and egress to said property together with the right to develop said property for the purposes of using said lands for parking in conjunction with its proposed development pursuant to the terms and provisions of this lease. The Lessee shall have the right to pave said area, to curb said area, to stripe the area for designation as parking and to perform any other work in said area necessary to prepare said land for a parking field, including any provisions necessary for appropriate drainage of said land and for proposed lighting of said land.

2) The Lessor shall, prior to the commencement of the term of this lease, and prior to the obligation of the Lessee to pay to the Lessor rentals pursuant to the terms of this lease, grade said property to an elevation set forth upon the plot plan which is attached hereto and made a part hereof. The Lessee, in making its application for the required permits pursuant to the terms and provisions of this Lease, shall have a right to include in its plans its proposed development of said parking field and a failure of any contingency in the lease including but not limited to the provisions dealing with obtaining the necessary building permits, boring and percolation tests, and the title requirements* shall allow the Lessee to cancel the entire Lease.

3) The Lessee shall be obligated to pay to the Lessor any increases in the real estate taxes for said property. The Lessee's real estate taxes therefore shall be the payment of the real estate taxes on the property described on page 1A as is set forth in paragraph 5E and for the increased real estate taxes over the base year, which year shall be the first year of the term of this Lease on the property set forth in the schedule attached hereto. The Lessee shall pave a roadway or means of ingress and egress to said property as is set forth on the attached plot plan and is outlined in red upon the commencement of the term of this Lease. The Lessee shall have an exclusive

*affecting the property by which the Lessee has parking rights upon

RIDER to Lease dated June 8, 1976 by and between HAROLD MILLER, as Lessor, and  FRANCHISE REALTY INTERSTATE CORPORATION, as Lessee.

Page 2

right to park on that property set forth in the Supplement of Lease except as is hereinafter provided.  The Lessee shall maintain the area in good condition and repair and shall carry all insurance required under the terms and provisions of the main lease and all obligations and duties of the Lessee under the terms and provisions of the lease shall be applied to said property. In the event that the Lessor develops the adjoining lands  set forth in Exhibit A attached hereto and made a part hereof with improvements, containing a minimum of _____ square feet, the Lessor shall have the right to notify the Lessee that it shall incorporate the lands set forth in  Exhibit A into said development.  In the event that the Lessor so notifies the Lessee of its intention to utilize the land set forth in the Supplement of Lease, then the provisions and terms of this paragraph concerning said lands in the Supplement of Lease shall terminate as of that date and the terms and provisions of the Supplement of Lease shall prevail.  The Lessee's rights to  said lands shall be set forth in the Supplement of Lease and the Lessor shall assume all obligations as is set forth in said Supplement of Lease.  The Lessee and Lessor shall have common and mutual rights to said lands as set forth in the Supplement of Lease and the Lessee's obligations concerning said property shall only be those as are specifically stated in the Supplement of Lease and thereafter the Lessee shall have no further obligations for the same of the increased real estate taxes against the said property, for the maintenance of said property, or or the maintenance of insurance upon said property, or for lighting charges. and

SUPPLEMENT

LEGAL DESCRIPTION AND PARKING EASEMENT

This Supplement is attached to and forms a part of that certain Lease dated

____June 8_____, 19 76 , by and between  HAROLD MILLER_____

_____ as Lessor, and  FRANCHISE REALTY INTERSTATE

___CORPORATION_____ as Lessee.

1.  DESCRIPTION OF PROPERTY

A.  Lessor hereby leases to Lessee a portion of the following described real

property in the City of__ Hyde Park_____, County of_____

___Dutchess_____, State of___New York_____;

~~(insert legal description~~
~~of entire shopping center)~~

*SEE EXHIBIT"A"- ATTACHED*

\* *Together with the rights to use in common with the Lessor as is*
*provided for, here and after any parking fields erected by the*
*Lessor on his adjoining lands.*

B.  A portion of the above description includes the site for a McDonald's

Restaurant to be erected by __ Lessee ____ having a width of _135'±_

_____ and running a depth of _ 210'±_

located as shown on plot plan dated_____attached

hereto and made part hereof as Exhibit "A" (the exact legal description

based upon the certified survey provided in accordance with Article __1___

shall be incorporated herein by Amendment), together with all of Lessor's

easements and appurtenances in adjoining land, highways, roads, streets,

lanes, whether public or private, reasonably required for the installation

maintenance, operation on service of sewer, water, gas, power, and other

utility lines.

2.  PARKING EASEMENTS AND USE OF COMMON AREAS

A.  All of those portions of Exhibit "A" designated as common areas,

parking areas, and driveways for ingress and egress on Exhibit "A" may be

used, during the entire term of this lease and any extension thereof, by the

McD OR-12-73

Lessee, its invitees, licensees, and patrons, in common with all other tenants of the Shopping Center. Lessor agrees that said parking area ~~shall consist of not less than _____ car parking spaces, as shown on Exhibit "A", and that said parking area~~, common areas and drives, as shown on Exhibit "A", shall not be changed without Lessee's consent.

B. ~~Lessee and~~ Lessor may erect curbs or curbstops in order to define the ~~demised premises and~~ adjoining commercial areas, so long as said curbstops do not detract from the mutual and common parking and access rights of the Lessee.

3. MAINTENANCE OF PARKING & COMMON AREAS

A. During the entire term of this lease and any extensions thereof, Lessor shall maintain and repair the entire parking and common areas shown on Exhibit "A". This obligation on the part of Lessor to maintain said parking and common areas in good condition and repair shall, without limiting the generality thereof, include the following:

   a) Maintaining the surfaces in a level, smooth and evenly-covered condition with the type of surfacing material originally installed or of similar quality, use and durability;

   b) Removing all papers, debris, snow, ice, filth and refuse and thoroughly sweeping the areas to the extent reasonably necessary to keep said areas in a neat, clean and orderly condition;

   c) Placing, keeping in repair, and replacing any necessary appropriate direction signs, markers and lines; and operating, keeping in repair, and replacing when necessary such artificial lighting facilities as shall be reasonably required;

   d) Maintaining any perimeter walls in a good condition and state of repair;

   e) Maintaining all landscaped areas, making such replacements of shrubs and other landscaping as is necessary, and keeping said areas at all times adequately weeded, fertilized and watered.

B. During the term of this lease, Lessor shall have the right to enact reasonable rules for all tenants concerning the conduct and operation of the parking and common areas.

McD OR-12-73

-7-

C. It is specifically understood and agreed that Lessee shall have no obligation or liability whatsoever in connection with the ownership, maintenance or management of the parking area, malls and common areas involved, and that Lessor shall manage, operate and maintain the parking area, malls, and common areas, or cause the same to be done on its behalf, and that Lessor, and/or its nominee, shall provide and maintain, at its cost and expense, during the entire term of said Lease as it may be extended, insurance policy or policies which will insure Lessee against injury to persons occurring in, on or about said parking area, malls, and common areas, the liability under such insurance to be not less

*or* than ~~Five Hundred Thousand Dollars ($500,000.00)~~ ONE MILLION ($1,000,000) DOLLARS for any one person injured or One Million Dollars ($1,000,000.00) for any one accident or One Hundred Thousand Dollars ($100,000.00) for property damage. Lessor shall cause to be issued to Lessee proper certificates of insurance evidencing that the foregoing covenants of Lessor have been complied with, and such certificates shall provide that if the underlying insurance is cancelled or changed during the policy period the insurance carrier will notify the Lessee twenty (20) days prior to same.

D. In the event that Lessee acquires title to the demised premises pursuant to the terms of this lease, the easements herein conveyed shall be perpetual. In such event, Lessor agrees to deliver to Lessee, at closing, a recordable document to effectuate the foregoing.

LESSOR:   HAROLD MILLER

BY:

ATTEST:

WITNESS:

LESSEE:   FRANCHISE REALTY INTERSTATE CORPORATION

BY:

ATTEST:

Asst. Secretary

WITNESS:

Exhibit B

AGREEMENT dated this 23RD day of May, 1977 by and between HAROLD MILLER (hereinafter referred to as Lessor), and FRANCHISE REALTY INTERSTATE CORPORATION, (hereinafter referred to as Lessee).

WHEREAS, the parties lease a certain parcel of land in the Town of Hyde Park, County of Dutchess, State of New York by Lease dated June, 1976; and

WHEREAS, the parties had submitted for approval certain plans and specifications for the proposed development by the Lessee; and

WHEREAS, a permit has been issued pursuant to said plans, but said permit is conditioned upon certain conditions which are not the subject of the Lease dated June, 1976.

NOW THEREFORE, for One ($1.00) Dollar and other valuable consideration receipt of which is hereby acknowledged, the parties agree as follows:

1): The demised premises set forth in the Lease is hereby amended, and substituted in lieu thereof is the following description:

PARCEL 1

BEGINNING at a point in the easterly line of Route 9 the said point being the northwesterly corner of the herein described parcel and being South 01 degrees 03 minutes and 50 seconds East 83.64 feet from the northwesterly corner of lands of Harold Miller and the southwesterly corner of lands of Joseph H. Mesuda thence through the lands of Harold Miller along the northerly line of the herein described parcel South 88 degrees 08 minutes 50 seconds East 220.20 feet to the northeasterly corner of the herein described parcel being a point in the westerly line of a future interior access road running in a north-south direction within the proposed shopping center; thence still through the lands of Harold Miller along the easterly line of the herein described parcel along the westerly line of the above mentioned future interior access road South 01 degrees 03 minutes 50 seconds East 129.75 feet to the southeasterly corner of the herein described parcel being the point of intersection of the westerly line of the above mentioned future interior access road with the northerly line of a future entrance road from Route 9; thence still through the lands of Harold Miller along the southerly line of the herein described parcel along the northerly line of the future entrance road from Route 9 following in part a portion of existing curb North 89 degrees 30 minutes 40 seconds West 204.94 feet and along a curve to the right on a radius of 30.00 feet a distance of 30.38 feet to the southwesterly corner of the herein described parcel being the point of intersection of the northerly line of the above mentioned road with the easterly line of Route 9; thence along the westerly line of the herein described parcel along the easterly line of Route 9 North 01 degrees 03 minutes 50 seconds West 120.89 feet to the point or place of beginning and containing 0.67 acres more or less.

Subject to a water line easement ten feet in width granted to the Hyde Park Fire and Water District, said easement being recorded in Liber 1034 of Deeds at Page 35.

PARCEL 2

BEGINNING at the southwesterly corner of the herein described parcel the said point being South 89 degrees 30 minutes 40 seconds East 30.01 feet from

C COPY

AGREEMENT dated this      day of        , 1977 by and between
HAROLD MILLER (hereinafter referred to as Lessor), and FRANCHISE
REALTY INTERSTATE CORPORATION, (hereinafter referred to as
Lessee).

### Page 2

the southeasterly corner of the above described 0.67 acre
parcel #1; thence through lands of Harold Miller along the
westerly line of the herein described parcel along the easterly
line of a future interior access road North 01 degrees 03
minutes 50 seconds West 136.51 feet and along a curve to the left
on a radius of 203.00 feet a distance of 3.50 feet to the north-
westerly corner of the herein described parcel; thence continuing
through lands of Harold Miller along the northerly line of the
herein described parcel South 87 degrees 07 minutes 10 seconds
East 120.00 feet to the northeasterly corner of the herein des-
cribed parcel; thence continuing through lands of Harold Miller
along the easterly line of the herein described parcel South 01
degrees 10 minutes 40 seconds East 135.00 feet to the south-
easterly corner of the herein described parcel; thence continuing
through lands of Harold Miller along the southerly line of the
herein described parcel North 89 degrees 30 minutes 40 seconds
West 120.00 feet to the point or place of beginning and
containing 0.38 acres more or less.

Subject to a water line easement ten feet in width granted
to the Hyde Park Fire and Water District as it crosses the
southwesterly corner of the above described parcel, said
easement being recorded in Liber 1034 of Deeds at Page 35.

(The above descriptions are subject to verification by
Milton Chazen, L.S.)

2) Whereas the revised legal description set forth in paragraph
"1" herein extends the demised premises an additional depth of
ten feet, Exhibit A of the Lease is modified in that the demised
premises shall be extended an additional ten feet in depth and
the road to the rear of said demised premises for the additional
parking shall also be moved eastward by said ten feet.

3) Lessee has placed out to bid the paving of the access road
to the south of the demised premises running from Route 9
eastward to the additional parking area. The cost for doing said
work is $3,150.

The Lessor agrees to pay to the Lessee an amount equal to $1,575,
upon the completion of said work by the Lessee.

AGREEMENT dated this         day of          , 1977 by and between
HAROLD MILLER (hereinafter referred to as Lessor), and FRANCHISE
REALTY INTERSTATE CORPORATION, (hereinafter referred to as
Lessee).

### Page 3

4)  Lessor shall immediately commence to complete the work
required for it to complete pursuant to the Lease Agreement and
terms of the Building Permit.  Said work shall include grading
of that property set forth in Exhibit A which is identified as
additional parking.  The Lessor further agrees to immediately
commence the overall improvement of the site and other off site
lands, including his shopping center and to continue said work
diligently and continually, barring acts of god, strikes and
other such calamities beyond his control.

5)  Lessor does also agree to complete all work on the Lessor's
adjoining property which must be completed in order to obtain a
certificate of occupancy for the Lessee's proposed use to be
issued by the appropriate governmental authority to be completed
prior to the date agreed upon as a reasonable time for the
promotion of the opening of the McDonald's restaurant.

6)  As Consideration for the Lessor's promise to complete said
work provided for herein in Paragraphs 3, 4, and 5, the Lessee
agrees to commence the payment of rent on February 11, 1977, any
rent from said date to the date hereof to be paid upon execution
of this agreement.

    In addition, as consideration for the Lessor's agreement to
add the hereinabove described land to the demised premises,
Lessee agrees to pay the sum of Nine Thousand Two Hundred Forty
($9,240) Dollars, as additional rent, due and payable upon
execution of this instrument.

7)  The parties agree that Lessor's obligation to pave the roads
shall, notwithstanding the date, be subsequent and subject to
Lessee's construction activities which may damage said pavement.

8)  In the event Lessor fails to complete his work as aforesaid,
Lessee, upon prior written notice of intention to Lessor, may

AGREEMENT dated this          day of              , 1977 by and between
HAROLD MILLER (hereinafter referred to as Lessor), and FRANCHISE
REALTY INTERSTATE CORPORATION, (hereinafter referred to as
Lessee).

<u>Page 4</u>

complete the work at a reasonable cost, and deduct the expense

thereof from the rents to be paid by Lessee.

9)  The lease, as herein modified, is ratified and confirmed.

IN WITNESS WHEREOF the parties set their hands and seals.

Lessor                          Lessee

                                FRANCHISE REALTY INTERSTATE CORPORATION

_____         By _____
HAROLD MILLER

This Agreement, made this 30th day of May, 1980, between HAROLD MILLER, 85 Market Street, Poughkeepsie, New York, the "Lessor"

and

McDONALD'S CORPORATION, successor to Franchise Realty Interstate Corporation ~~FRANCHISE REALTY INTERSTATE CORPORATION~~, McDonald's Plaza, Oak Brook, Illinois, the "Lessee"

WITNESSETH

WHEREAS, Lessor and Lessee are landlord and tenant of certain real property at Route 9, Town of Hyde Park, Dutchess County, New York, under a Lease Agreement dated June 8, 1976, as amended by instrument dated May 23, 1977, and

WHEREAS, Lessee wishes to install a drive-through window and make other improvements which shall of necessity result in increased costs to Lessor for maintaining his adjacent realty.

NOW THEREFORE, in consideration of the premises the parties agree as follows:

1. Lessor shall cooperate with Lessee in obtaining all approvals necessary for the drive-through window and attendant improvements. All costs shall be borne by Lessee.

2. Lessee shall pay, commencing June 1, 1980, the sum of ONE HUNDRED TWENTY FIVE ($125) DOLLARS per month as additional rent.

3. Said sum shall be due monthly throughout any renewal periods and notwithstanding any other increments in rent pursuant to the terms of the Lease.

4. Lessor shall be held harmless from any claims arising from the construction as aforesaid.

In Witness Whereof, the parties have set their hands and seals the day and year first above written.

Lessor

HAROLD MILLER

Lessee: McDONALD'S CORPORATION
~~XXXXXXXXXXXXXXXXXXXXXXXXXXXXX~~

By: _____
      Vice President

ATTEST: _____
          Assistant Secretary



*Exhibit C*

McDonald's Corporation
One McDonald's Plaza
Oak Brook, Illinois 60523
Direct Dial Number (630) 623-3931
Fax Number (630) 623-5994

**SPECIAL CERTIFIED MAIL - RETURN RECEIPT REQUESTED**

April 3, 2007

Hydrio, Inc.
54 Garden Street
Poughkeepsie, NY 12601

Attention: Robert L Baxter

RE:   Hyde Park, NY
566 Albany Post Road
L/C: 031-0570, File #4323

Dear Mr. Baxter:

Reference is made to that certain Ground Lease dated June 8, 1976 as amended by Agreement dated May 23, 1977 and Agreement dated May 30, 1980 ("Lease") between Hydrio, Inc., successor in interest to Harold Miller, as Landlord, and McDonald's Corporation, a Delaware corporation, successor by merger to Franchise Realty Interstate Corporation, an Illinois corporation, as Tenant, covering property at the premises located at the address shown above and described in the Lease ("Premises").

McDonald's Corporation exercises its option to purchase the Premises for the price of $165,000 as set forth in paragraph 17 of the Lease.

You will be contacted in the near future to advise you of the Escrow Agent who will be handling this closing.  McDonald's Deed and Money Escrow Instructions and other necessary forms governing this transaction will be forwarded to you shortly. In addition, since a subdivision is most likely required in order for you to convey fee simple title to the Premises, there will be additional documents which you will need to execute for such purpose.

Would you kindly acknowledge the receipt of this letter by signing in the space provided below and returning the original to me in the envelope enclosed for your convenience. You may retain the second copy for your records.

Thank you for your cooperation.

Very truly yours,

**McDONALD'S CORPORATION**

*Martha a Lundin*

Martha A Lundin
Senior Counsel
U.S. Legal Department

Received this _____ day of _____, 2007

Hydrio, Inc.

By: _____

Enclosures

cc:   Janet Ogalo / New York Metro Region
Carol DeMarco / East Division

S:\H:O\DEPT\Legal\US\LEGAL\accounsel\Division - East\0310570 Hyde Park\Option Exercise Letter – Purchase.doc



# H Y D R I C   I N C .

## PROPERTY MANAGERS · OWNERS
### 54 GARDEN STREET, POUGHKEEPSIE, NY 12601
### 845-471-1047　　　　　FAX 845-485-8764

May 5, 2007

**CERTIFIED MAIL, RETURN RECEIPT REQUESTED**
**AND REGULAR FIRST-CLASS MAIL**

McDonald's Corporation
1 McDonald's Plaza
Oak Brook, Illinois 60523
Attention:  Martha A. Lundin,
　　　　　　　Senior Counsel U.S. Legal Department

*Exhibit D*

Re:　Hyde Park, New York
　　　566 Albany Post Road
　　　<u>L/C: 031-0570, Your File No. 4323</u>

Dear Ms. Lundin:

　　　We are in receipt of your letter dated April 3, 2007, in which McDonald's Corporation ("McDonald's") purports to exercise "its option to purchase the Premises for the price of $165,000.00 set forth in paragraph 17 of the Lease."

　　　Be advised, however, that it is Landlord's position that the purported purchase option is null and void *ab initio* and unenforceable, because it violates, *inter alia*, New York's common law rule against unreasonable restraints on alienation of property.  As a result, McDonald's has no right to purchase the Premises based on the invalid and unenforceable alleged option.

　　　This letter is written without prejudice to all of Landlord's rights and remedies, which are reserved in all respects.

Very truly yours,

*Robert L. Baxter*

Robert Baxter
President

©COPY